UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────

EDELMAN ARTS, INC.,

                         Plaintiff,          17-cv-4789 (JGK)

          - against -                        MEMORANDUM OPINION &
                                             ORDER
REMKO SPOELSTRA et al.,

                         Defendants.
─────────────────────────────────────

JOHN G. KOELTL, District Judge:

    Following the entry of a default judgment against all

defendants on the plaintiff's claim for breach of contract, the

case was referred to Magistrate Judge Sarah Netburn for an

inquest on damages. After receiving submissions from the

plaintiff, Edelman Arts, Inc., the only party that appeared at

the inquest, the Magistrate Judge issued a Report and

Recommendation concluding that this Court should award no

damages to the plaintiff. The plaintiff timely objected to the

Report and Recommendation. For the reasons that follow, the

Court declines to adopt the Report and Recommendation at this

time. The case is recommitted to the Magistrate Judge pursuant

to Federal Rule of Civil Procedure 72(b)(3) for further

proceedings consistent with this opinion.

                              I.

    The allegations in the Complaint, which are accepted as

true for purposes of liability, are as follows. The plaintiff,

                              1

Edelman Arts, Inc., is a New York-based business that finds and
brokers works of art for sale around the world. Second Amended
Complaint ("SAC") ¶ 1. At some point, the plaintiff was
introduced to Remko Spoelstra, a contractor who purchases art on
behalf of a member of the Abu Dhabi royal family. Id. at ¶¶ 3,
9. Around the time of the introduction, Spoelstra, at the
instruction of the defendant Jason Holloway, an employee of a
member of the Abu Dhabi Royal Family, viewed and agreed to
purchase from the plaintiff a number of works of art on behalf
of the defendant Swiss Business Council. Id. at ¶¶ 4, 10, 14,
20, 21. Specifically, Spoelstra agreed to purchase from the
plaintiff a Keith Haring acrylic on canvas for $6 million, an
untitled Keith Haring acrylic on tarp ("Haring Tarp 1") for $4.8
million, another Keith Haring untitled acrylic on tarp ("Haring
Tarp 2") for $6 million, an untitled Keith Haring enamel on wood
totem for $3 million, and an Edvard Munch painting for $7
million. Dkt. No. 25-1, at 1-4; SAC ¶ 14. The plaintiff invoiced
Spoelstra on November 18, 2016 for each of the works. Dkt. No.
25-1. Spoelstra then billed Swiss Business Council for the
works. SAC ¶ 21; Dkt. No. 25-2. Following billing, Holloway
traveled to New York City to take possession of the works
following payment. SAC ¶ 22. The plaintiff never received
payment and did not proceed to deliver any of the works to
Holloway. Id. at ¶ 25. The plaintiff then commenced this action

2

for breach of contract against the defendants for their failure to complete the transactions.

Following the inception of the lawsuit, the plaintiff allegedly mitigated damages arising from the defendants' breach of contract by selling Haring Tarp 1 for $3,125,000.00 and Haring Tarp 2 for $3,500,000.00. Id. at ¶¶ 15-17. In the SAC, the plaintiff initially requested damages principally of $20,175,000.00, calculated by totaling up $6 million for the unsold Haring canvas, $3 million for the unsold Haring totem, $4,175,000.00, the invoiced prices for Haring Tarp 1 and Haring Tarp 2 less the amount recouped for those pieces by subsequent sales to third parties, and $7 million for the Munch painting. Id. at ¶¶ 29-32.

Judge Katherine B. Forrest, to whom this case was previously assigned, found, when entering a default liability judgment against all defendants except Spoelstra, that the SAC "appropriately addresses all legal elements of a breach of contract claim, if all the allegations in the complaint are taken as true." Dkt. No. 56. On April 22, 2019, this Court found that the plaintiff was entitled to a default judgment against all defendants, including Spoelstra, on the plaintiff's claim for breach of contract. Dkt. No. 84. The Court then referred the case to the Magistrate Judge for an inquest on damages. Dkt. No. 85.

In the plaintiff's proposed findings of fact and conclusions of law, the plaintiff did not renew its request for damages in the principal amount of $20,175,000.00, but instead requested damages of $7,585,000.00 plus $2,199.441.87 in interest, calculated using the New York State statutory interest rate of nine percent per annum, for a total of $9,784,441.87. Dkt. No. 90 ¶ 21. The reduction in the plaintiff's damages request from the SAC to the inquest appeared to be due to the fact that the plaintiff's damages request at the inquest was based primarily on estimated commissions that the plaintiff would have received for brokering the sale of the five works of art to the defendants had the defendants not breached the contract. The plaintiff indicated that its commission for the sale of the $7 million Munch painting to the defendants would have been $1.4 million (Dkt. No. 90 ¶ 23); the plaintiff's commission for the sale of the $6 million Haring canvas to the defendants would have been $1.2 million (id. at ¶ 24); and the plaintiff's commission for the sale of the $3 million Haring totem to the defendants would have been $600,000 (id. at ¶ 25).[1]

---

[1] Although the plaintiff did not specify before the Magistrate Judge the basis for the commissions, all three of these commissions clearly constitute 20% of the total invoice price. In the Edelman Declaration submitted in support of the plaintiff's objection to the Report and Recommendation, the plaintiff states that the 20% commission was "agreed to with Spoelstra prior to issuing the invoices." Edelman Decl. (Dkt. No. 97-1) ¶ 7. In support of this calculation, the plaintiff submitted exhibits relating to the standard commissions used by auction houses such as Christie's and Sotheby's. Id., Exs. E-G. Upon this matter being recommitted to the Magistrate Judge, these exhibits may be considered.

The remaining damages request appeared to be the difference
between what the plaintiff would have collected for Haring Tarp
1 and Haring Tarp 2, had the defendants purchased those two
works, and what the plaintiff allegedly did collect after the
two works were sold to third parties to mitigate damages,
although the plaintiff's proposed findings of fact and
conclusions of law did not refer to Haring Tarp 2 but only to
Haring Tarp 1, which originally carried an invoice price of $4.8
million.[2] Id. at ¶ 22.

Following the submission of the plaintiff's findings of
fact and conclusions of law, the Magistrate Judge requested that
the plaintiff "set forth in greater detail the factual and legal
basis for calculating damages based on a combination of
potential commissions and the difference between the asking
price and the sale price of one 'Haring work' [Haring Tarp 1]
(the invoice for which is included in Plaintiff's Proposed
Findings of Fact and Conclusions of Law as 'Exhibit D')." Dkt.
No. 92. The plaintiff then supplemented its proposed findings of
fact and conclusions of law with an affidavit of Spoelstra and a
declaration of Asher Edelman, the president of the plaintiff
Edelman Arts, Inc. Dkt. No. 93. These submissions attested to

---

[2] In its proposed findings of fact and conclusions of law, the plaintiff
stated that Haring Tarp 1 "was subsequently sold by Artemus USA, LLC, its
owner, to mitigate its damages, for $2,815,000." SAC ¶ 22. Artemus USA, LLC
is not a party to this action.

the sales history and commission structure with respect to
Haring Tarp 1. The submissions sought to provide further support
that the damages suffered by the plaintiff with respect to
Haring Tarp 1 were $1,985,000.00 based on the difference between
the original invoice price of $4,800,000.00 and $2,815,000.00,
the amount allegedly received for the sale of Haring Tarp 1
after commissions were deducted. Edelman Decl. (Dkt. No. 93)
¶¶ 6-16 & Exs. A, B.

On January 14, 2020, the Magistrate Judge issued a Report
and Recommendation recommending that this Court award no
contract damages to the plaintiff because, although the
defendants were liable for breach of contract, "[t]he Court
cannot determine with reasonable certainty based on the evidence
provided by Plaintiff that the commissions on the invoiced sales
equal the amounts listed in Plaintiff's damages calculations."
Dkt. No. 94, at 6. In particular, the Magistrate Judge found
that "[n]owhere in Plaintiff's submissions does Plaintiff
provide evidence of the percentage of the alleged commission,
how that commission is calculated, that Plaintiff has received
any similarly calculated commissions in the past, or that such
commission amounts are routine or industry standard." Id. at 7.
Additionally, the Magistrate Judge found that the "Plaintiff
does not adequately account for the remaining discrepancy
between the principal amount sought ($7,585,000.00) and the

Court's calculation of the alleged three lost commissions plus

the one resale difference ($5,185,000.00)." Id. Consequently,

the Magistrate Judge stated that she could not "conclude that

Plaintiff is entitled to any of the $7,585,000.00 it seeks." Id.

at 8.

The plaintiff timely filed objections to the Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Federal

Rule of Civil Procedure 72(b) on the grounds that 1) the

Magistrate Judge did not ask for supplemental filings on the

issue of calculating commissions, broadly, but only asked for

supplemental filings concerning Haring Tarp 1, and that the

Magistrate Judge nevertheless recommended an award of no damages

in large part because no evidence was submitted about how

commissions were calculated; 2) the Magistrate Judge failed to

award damages totaling $1,985,000 for Haring Tarp 1, which was

sold to mitigate damages; and 3) the Magistrate Judge failed to

award damages totaling $3 million for the Haring totem. Dkt. No.

97.[3]

---

[3] The plaintiff also moved pursuant to Federal Rule of Civil Procedure 52(b)
to alter or amend the Magistrate Judge's Report and Recommendation. Dkt. No.
98. On March 13, 2020, the Magistrate Judge denied the plaintiff's motion
because Rule 52(b) is not a proper vehicle for challenging a Magistrate
Judge's Report and Recommendation, and in any event that the plaintiff had
not met the standard for amending or reconsidering the conclusions in the
Report and Recommendation. Dkt. No. 100.

## II.

### A.

The district court must "make a de novo determination of
those portions of the report . . . to which objection is made"
and "may accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge." 28
U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b)(3). "The
judge may also receive further evidence or recommit the matter
to the magistrate judge with instructions." 28 U.S.C.
§ 636(b)(1); see also Fed. R. Civ. P. 72(b)(3). When reviewing
the Report and Recommendation of a magistrate judge, "[t]he
court need not conduct a de novo hearing on the matter. Instead,
it is sufficient that the court 'arrive at its own independent
conclusion' regarding those portions of the report to which
objections are made." In re Hulley Enters. Ltd., 400 F. Supp. 3d
62, 69 (S.D.N.Y. 2019) (internal citation omitted) (quoting
Nelson v. Smith, 618 F. Supp. 1186, 1189-90 (S.D.N.Y. 1985)).

### B.

"The general rule for measuring damages for breach of
contract has long been settled. It is the amount necessary to
put the plaintiff in the same economic position he would have
been in had the defendant fulfilled his contract." Indu Craft,
Inc. v. Bank of Baroda, 47 F.3d 490, 495 (2d Cir. 1995)
(alteration and internal quotation marks omitted). "In a breach

of contract action, a plaintiff ordinarily has a duty to mitigate the damages that he incurs. If the plaintiff fails to mitigate his damages, the defendant cannot be charged with them. This duty applies to those damages that the plaintiff could have avoided with reasonable effort and without undue risk, burden or expense." U.S. Bank Nat'l Ass'n v. Ables & Hall Builders, 696 F. Supp. 2d 428, 440-41 (S.D.N.Y. 2010). Further, "under New York law, where the breach of contract is a failure to pay money, the plaintiff is entitled to recover the unpaid amount due under the contract plus interest." Gulf Coast Bank & Trust Co. v. ASESD, LLC, No. 11-cv-5023 (RMB) (RLE), 2014 WL 6850970, at *4 (S.D.N.Y. Aug. 29, 2014).

In order to recover contract damages, the plaintiff has the burden of proving that the "damages were actually caused by the breach, that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made and that the alleged loss is capable of proof with reasonable certainty." Fitzpatrick v. Animal Care Hosp., PLLC, 962 N.Y.S.2d 474, 479 (App. Div. 2013) (internal quotation marks omitted).

It is well established that "the rule of certainty as applied to the recovery of damages does not require mathematical accuracy or absolute certainty or exactness, but only that the loss or damage be capable of ascertainment with reasonable

certainty." <u>Reichman v. Warehouse One, Inc.</u>, 569 N.Y.S.2d 452,

453 (App. Div. 1991). "In most contexts, [the rule of reasonable

certainty] is akin to the ordinary preponderance of the evidence

standard, which requires only that damages are 'capable of

measurement based upon known reliable factors without undue

speculation.'" <u>In re Methyl Tertiary Butyl Ether Products</u>

<u>Liability Litig.</u>, 643 F. Supp. 2d 446, 456-57 (S.D.N.Y. 2009)

(quoting <u>Ashland Mgmt. Inc. v. Janien</u>, 624 N.E.2d 1007, 1010

(N.Y. 1993)). "Although [the plaintiff] bears the burden of

proving damages with reasonable certainty, 'the need for

specificity in proving damages is mitigated by the principle

that when there has been a clear showing of some injury, and

damages are not susceptible of precise measurement because of

defendant's conduct, a fact finder 'has some latitude to make a

just and reasonable estimate of damages based on relevant

data.'" <u>Raishevich v. Foster</u>, 9 F. Supp. 2d 415, 417 (S.D.N.Y.

1998) (alterations and citation omitted); <u>see also</u> <u>Freund v.</u>

<u>Washington Sq. Press, Inc.</u>, 314 N.E.2d 419, 420-21 (N.Y. 1974)

("[S]o far as possible, the law attempts to secure to the

injured party the benefit of his bargain, subject to the

limitations that the injury . . . was foreseeable, and that the

amount of damages claimed be measurable with a reasonable degree

of certainty and, of course, adequately proven."); Restatement

(Second) of Contracts, § 352 ("Damages are not recoverable for

loss beyond an amount that the evidence permits to be
established with reasonable certainty."); Story Parchment Co. v.
Paterson Parchment Paper Co., 282 U.S. 555, 562 (1931) ("The
rule which precludes the recovery of uncertain damages applies
to such as are not the certain result of the wrong, not to those
damages which are definitely attributable to the wrong and only
uncertain in respect of their amount.").

     Following a default judgment, the court "should take the
necessary steps to establish damages with reasonable certainty,"
Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,
109 F.3d 105, 111 (2d Cir. 1997), which may include conducting
an evidentiary hearing to "determine the amount of damages,"
"establish the truth of any allegation by evidence," or
"investigate any other matter," Fed. R. Civ. P. 55(b)(2).
However, in some circumstances, an inquest on damages may be
conducted without an evidentiary hearing, and may instead be
determined based solely on documentary submissions. See Tamarin
v. Adam Caterers, Inc., 13 F.3d 51, 53-54 (2d Cir. 1993);
Maldonado v. La Nueva Rampa Inc., No. 10-cv-8195, 2012 WL
1669341, at *2 (S.D.N.Y. May 14, 2012) ("[A] hearing is not
required where a sufficient basis on which to make a calculation
exists.").

11

C.

In this case, the plaintiff admittedly submitted evidence to the Magistrate Judge at the inquest that was not the model of clarity and was incomplete. The plaintiff submitted exhibits to this Court in support of its objections to the Report and Recommendation that the commission rates that the plaintiff and Spoelstra allegedly agreed upon were standard in the industry, but the plaintiff did not submit that evidence to the Magistrate Judge and did not submit other evidence that would have been helpful to the Magistrate Judge at the inquest on damages.[4]

Nevertheless, the Magistrate Judge's recommendation that no contract damages be awarded to the plaintiff cannot be adopted because the Magistrate Judge did not "take the necessary steps to establish damages with reasonable certainty." Transatlantic Marine Claims, 109 F.3d at 111.

There was clearly a breach of contract in this case and the parties plainly did not intend for the plaintiff to work as a broker of multi-million dollar works of art for free without receiving commissions. This is not a case in which an award of no damages is warranted because the plaintiff seeks damages based on "'a multitude of assumptions' that require[]

---

[4] Additionally, although the plaintiff stated in the SAC that both Haring Tarp 1 and Haring Tarp 2 had been sold to mitigate damages in this case, only Haring Tarp 1 was referred to during the inquest as a work of art that was sold to mitigate damages. This inconsistency would need to be clarified when the matter is recommitted to the Magistrate Judge.

'speculation and conjecture' and few known factors[.]"

Schoenfeld v. Hilliard, 218 F.3d 164, 172 (2d Cir. 2000)

(quoting Kenford Co., Inc. v. Erie County, 493 N.E.2d 234, 236

(N.Y. 1986); see, e.g., Lenard v. Design Studio, 889 F. Supp. 2d

518, 536 (S.D.N.Y. 2012) (denying lost profits from anticipated

rental income because the plaintiff had not demonstrated a

history of subletting the apartment, a right to sublet, a ready

tenant, or anything about market rates for rentals of comparable

apartments). The theory of damages in this case is

straightforward and does not rely on "a multitude of

assumptions": But for the defendants' breach, the plaintiff

would have collected commissions for finding and brokering

multi-million works of art. All that is left, it would seem,

would be to calculate the commissions that the plaintiff would

have collected for the five works of art and to determine the

amount by which the damages should be reduced because of

mitigation efforts that either were taken or could reasonably

have been taken to sell off the works of art, and to what extent

those efforts reduced the amount of unpaid commissions owed to

the plaintiff.

Although the Magistrate Judge requested that the plaintiff

make a supplemental submission with respect to Haring Tarp 1

alone following the submission of the plaintiff's initial

proposed findings of fact and conclusions of law, the Magistrate

Judge recommended to this Court that no damages be awarded with

respect to all five of the works of art in question because

> [w]hile Plaintiff provides invoices for each of the
> pieces stating the purchase price, Plaintiff offers no
> evidence of its anticipated commissions beyond
> conclusory allegations. Nowhere in Plaintiff's
> submissions does Plaintiff provide evidence of the
> percentage of the alleged commission, how that
> commission is calculated, that Plaintiff has received
> any similarly calculated commissions in the past, or
> that such commission amounts are routine or industry
> standard. There is similarly no evidence that the
> Defendants agreed to any commission rate.

Dkt. No. 94, at 6-7. Presumably, the plaintiff would have, had

the Magistrate Judge specifically requested, submitted to the

Magistrate Judge at least the evidence it submitted to this

Court in connection with its objections to the Report and

Recommendation. Moreover, to the extent that the documentary

submissions were insufficient, the Magistrate Judge could have

held an evidentiary hearing rather than denying all damages in a

case where it is plain that the plaintiff did in fact suffer

substantial damages that could be calculated with reasonable

certainty.

The plaintiff should now have the opportunity to present

any evidence that would allow the Magistrate Judge to award

damages to the plaintiff in this case with "reasonable

certainty." See Pineda v. Masonry Constr. Inc., 831 F. Supp. 2d

666, 672 (S.D.N.Y. 2011) (allowing plaintiffs following a

default judgment and inquest on damages in which the Magistrate

Judge recommended that the plaintiffs be awarded no damages on their claim for dishonored checks "to present evidence . . . to demonstrate that they are able to provide documentary evidence that establishes, with sufficient clarity, the number of hours worked for each of the pay periods at issue."); Perico, Ltd. v. Ice Cream Indus., Inc., No. 87-cv-4211, 1990 WL 11539, at *3 (S.D.N.Y. Feb. 9, 1990) (recommitting a case to the magistrate judge following default judgment and an inquest on damages "for a determination – based on evidence already submitted and further evidence which plaintiff may submit" to determine an attorneys' fees award that was to be treated as reliance damages).

The Court expresses no view about the total amount of damages that the plaintiff will ultimately be able to demonstrate with "reasonable certainty" after submitting the evidence that would be helpful to the Magistrate Judge to decide that question. Upon this case being recommitted, the Magistrate Judge should take all "necessary steps" to determine the amount of damages suffered by the plaintiff consistent with this opinion and with the law governing contract damages in arriving at a new Report and Recommendation.

## CONCLUSION

Pursuant to Federal Rule of Civil Procedure 72(b)(3), the

case is recommitted to the Magistrate Judge for further

proceedings.

**SO ORDERED.**
**Dated:    New York, New York**
**          May 5, 2020          _____/s/ John G. Koeltl_____**
**                                     John G. Koeltl**
**                              United States District Judge**